UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ERIC DWAYNE GRESHAM                                     CIVIL ACTION

VERSUS                                                  NUMBER: 14-1906

BOBBY JINDAL, GOVERNOR, ET AL.                          SECTION: "E"(5)


## REPORT AND RECOMMENDATION

This 42 U.S.C. §1983 proceeding was filed *in forma pauperis* ("IFP") by *pro se* Plaintiff, Eric Dwayne Gresham, against Defendants, Bobby Jindal, Governor of the State of Louisiana, and James "Buddy" Caldwell, Attorney General of the State of Louisiana.

Plaintiff is a state prisoner who is presently incarcerated at the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana. On April 9, 1997, Gresham was found guilty of the crime of armed robbery after trial, by jury, in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana. *See State v. Gresham*, 712 So.2d 946, 948 (La. App. 5th Cir. 1998), *writ denied*, 736 So.2d 200 (La. 1999). On April 25, 1997, Gresham was sentenced to forty years at hard labor without benefit of parole, probation, or suspension of sentence. *Id.* The State then filed a bill of information accusing Gresham of being a third felony offender under LSA-R.S. 15:529.1. *Id.* Following a hearing, on November 7, 1997, Gresham was adjudicated a third felony offender as charged whereupon his forty-year sentence was vacated and he was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. *Id.* Gresham's

conviction and sentence were affirmed on direct appeal. *State v. Gresham*, 712 So.2d 946 (La. App. 5th Cir. 1998), *writ denied*, 736 So.2d 200 (La. 1999).

Pursuant to the habitual offender statute that was in effect at the time that Gresham committed his armed robbery, if, *inter alia*, a defendant's third or either of his two prior felonies was defined as a crime of violence,[1/] the penalty for the third offense was life imprisonment without benefit of parole, probation, or suspension of sentence. *See State v. Dickerson*, __ So.3d __, 2013 WL 3969612 at *1 (La. App. 2nd Cir. 2013); *State v. White*, 850 So.2d 751, 762 (La. App. 2nd Cir. 2003), *writ denied*, 872 So.2d 510 (La. 2004); *State v. Wade*, 832 So.2d 977, 986 (La. App. 2nd Cir. 2002), *writ denied*, 840 So.2d 1213 (La. 2003). By Act No. 403 of the 2001 Regular Session, effective June 15, 2001, the Louisiana Legislature amended the habitual offender statute to provide that a life sentence was mandated only where all three of the defendant's convictions fell into a specified category, including being crimes of violence. *Dickerson*, __ So.3d at __, 2013 WL 3969612 at *1; *White*, 850 So.2d at 762; *Wade*, 832 So.2d at 986. That piece of legislation also created the Louisiana Risk Review Panel to which prisoners who had been convicted of non-violent offenses and whose sentences would have been ameliorated by the amended sentencing provisions could apply for possible leniency in the form of nonbinding recommendations on the exercise of clemency by the executive branch. *See, e.g.*, *Weaver v. LeBlanc*, 22 So.3d 1014, 1016-17 (La. App. 1st Cir. 2009), *writ denied*, 45 So.3d 1090 (La. 2010). Section 6 of Act 403 provided that its provisions were to be given only prospective effect. *Id.* at 1016 n. 8.

---

[1/] Armed robbery is defined as a crime of violence. LSA-R.S. 14:2(B)(21).

In 2006, the Louisiana Legislature enacted LSA-R.S. 15:308 to provide that the sentence reductions embraced by Act 403 were to be applied retroactively to allow ". . . persons who committed crimes, who were convicted, or who were sentenced . . ." under the stricter provisions prior to June 15, 2001 to apply to the Risk Review Panel for review under the more lenient penalty provisions, ". . . provided that such application ameliorates the person's circumstances." *See Normand v. Louisiana Risk Review Panel*, 47 So.3d 1045, 1046 (La. App. 1st Cir. 2010), *writ denied*, 71 So.3d 306 (La. 2011). However, by Act No. 123 of 2012, the Legislature eliminated the Louisiana Risk Review Panel entirely, repealing LSA-R.S. §§15:308(C) and 15:574.22. *Dickerson*, 2013 WL 3969612 at *2. Thus, the Risk Review Panel, a division of the Department of Public Safety and an agency of the executive branch of state government which previously had the authority to recommend clemency to the Board of Pardons or parole to the Board of Parole, no longer exists. *Id.*

Contrary to his false answer to question No. I(A) of the standardized §1983 complaint form where Plaintiff was asked whether he had begun any other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to his imprisonment (rec. doc. 1, p. 1), a review of the court's records reveals that Gresham previously initiated the lawsuit entitled *Gresham v. Jindal, et al.*, No. 14-CV-0692 "B"(1). In that matter, which was brought against Governor Jindal, Secretary James LeBlanc of the Louisiana Department of Public Safety and Corrections, and RCC Warden Robert Tanner, Gresham alleged that the abolishment of the Risk Review Panel in 2012 deprived him of a "state created liberty interest" because there was no longer a body to which he could apply in an attempt to avail himself of the ameliorative benefits of R.S. 15:308. In conducting the mandatory screening of that matter as is required by 28 U.S.C. §1915A(a), the Magistrate

3

Judge to whom that suit was allotted first noted Plaintiff's report that the state courts that had considered the claim had held that the abolition of the Risk Review Panel did not affect the power of the executive branch of the state government to reduce or commute his sentence. (No. 14-CV-0692, rec. doc. 6, p. 5). In finding that the state's decision to abolish the Risk Review Panel did not deprive Plaintiff of a protected liberty interest, the Magistrate Judge then noted that it was doubtful indeed whether Gresham was at any time eligible to apply to the Panel for review because he had been convicted of armed robbery, a crime of violence under R.S. 14:2(B)(21). (*Id.*). Ultimately, that lawsuit was dismissed as frivolous and/or for failing to state a claim upon which relief can be granted. (No. 14-CV-0692, rec. docs. 6, 7, 8, 13). Changing tack, Gresham now argues in this lawsuit that the 2001 amendments to Louisiana's multiple offender statute violate the Equal Protection Clause of the Fourteenth Amendment because they result in different treatment to offenders whose crimes were committed before and after June 15, 2001. (Rec. doc. 1). Just like his previous lawsuit, this one should also be dismissed as frivolous and for failing to state a claim under 28 U.S.C. §1915(e)(2)(B)(i) and (ii) for the following reasons.

First, as between Plaintiff and Governor Jindal, who was a party to Gresham's previous lawsuit, consideration of Plaintiff's equal protection claim appears to be foreclosed under traditional notions of *res judicata* or claim preclusion as it arises from the same nucleus of operative facts, namely, the 2001 amendments to R.S. 15:529.1 and other related statutes. *See Southmark Corporation v. Coopers & Lybrand*, 163 F.3d 925, 934 (5th Cir.), *cert. denied*, 527 U.S. 1004, 119 S.Ct. 2339 (1999). A complaint is subject to dismissal under §1915(e)(2)(B)(i) ". . . when it raises claims arising out of a common nucleus of operative facts that could have been brought in the prior litigation." *McGill v. Juanita Kraft*

*Postal Service*, No. 03-CV-1113, 2003 WL 21355439 at *2 (N.D. Tex. June 6, 2003), *adopted*, 2003 WL 21467745 (N.D. Tex. June 18, 2003)(quoting *Pittman v. Moore*, 980 F.2d 994, 994-95 (5th Cir. 1993)). Thus, as respects the Governor, review of Plaintiff's equal protection claim is unavailable here.

Second, the Equal Protection Clause essentially directs that all similarly situated persons be treated alike. *Mayabb v. Johnson*, 168 F.3d 863, 870 (5th Cir.), *cert. denied*, 528 U.S. 969, 120 S.Ct. 409 (1999)(quoting *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 1985)). In addressing an equal protection challenge to state legislation, ". . . such legislation is generally 'presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.'" *Id.* (quoting *City of Cleburne*, 473 U.S. at 440, 105 S.Ct. at 3254). Because the Equal Protection Clause is violated only by intentional discrimination, a plaintiff who alleges such a violation has the burden of proving the existence of purposeful discrimination. *Id.*. "The Equal Protection Clause is violated only by intentional discrimination. 'Discriminatory purpose . . . implies more than intent as violation or an awareness of consequences[.] It implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for <u>the purpose</u> of causing its effect on an identifiable group.'" *Id.* (quoting *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988)(internal quotations, citations, and footnote omitted)). "'The Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons.'" *Wilson v. Thaler*, No. 09-CV-2293, 2010 WL 1839288 at *5 (N.D. Tex. Apr. 9,

2010), *adopted*, 2010 WL 1839284 (N.D. Tex. May 6, 2010)(quoting *Romer v. Evans*, 517 U.S. 620, 631, 116 S.Ct. 1620, 1627 (1996)).

Under Louisiana law, the law in effect at the time of the commission of the offense is determinative of the penalty which the accused must suffer, *State v. Wright*, 384 So.2d 399, 401 (La. 1980), and a defendant must be sentenced according to the sentencing provisions in effect at the time that the crime was committed. *State v. Narcisse*, 426 So.2d 118, 130-31 (La. 1983), *cert. denied sub nom.* 464 U.S. 865, 104 S.Ct. 202 (1983). "'The mere fact that a statute may be subsequently amended, after the commission of the crime, so as to modify or lessen the possible penalty to be imposed, does not extinguish liability for the offense committed under the former statute.'" *Dickerson*, ___ So.3d at ___, 2013 WL 3969612 at *1 (quoting *Narcisse*, 426 So.2d at 130-31). The Supreme Court ". . . has explained the widely-accepted rule that 'the 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time.'" *Sonnier v. Quarterman*, 476 F.3d 349, 369 (5th Cir.), *cert. denied*, 552 U.S. 948, 128 S.Ct. 374 (2007)(quoting *Sperry & Hutchinson Co. v. Rhodes*, 220 U.S. 502, 505, 31 S.Ct. 490, 491 (1911)). Guided by that principle, the Fifth Circuit and various district courts within it have rejected equal protection challenges to a variety of legislative changes that resulted in the different treatment of criminal defendants from a date certain forward. *Sonnier*, 476 F.3d at 367-69 (changes to Texas capital sentencing scheme); *Mayabb*, 168 F.3d at 870-71 (changes to Texas parole eligibility laws); *Perkins v. Cabana*, 794 F.2d 168, 169 (5th Cir.), *cert. denied*, 479 U.S. 936, 107 S.Ct. 414 (1986)(changes to privileges available under Mississippi multiple offender statute); *Frank v. Estelle*, 543 F.2d 567, 568 (5th Cir. 1976)(changes to Texas "good time" statute); *Wilson*, 2010 WL 1839288 at *5-6 (changes

to composition of Texas parole board panel); *Pierce v. Warden, Louisiana State Penitentiary*, No. 06-CV-1185, 2009 WL 55937 at *13 (W.D. La. Jan. 6, 2009)(changes to Louisiana's rules of joinder). "[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Sonnier*, 476 F.3d at 368 (citing *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 113 S.Ct. 2096 (1993)).

The Court also notes that the present named Defendants, the Governor and the Attorney General, played no part in enacting the 2001 changes to the Louisiana habitual offender statute nor did they have a role in the imposition of the sentence that Gresham is currently serving. In any event, Plaintiff has not demonstrated that the statutory change of which he complains was animated by discriminatory intent or purpose, *i.e.*, that the decisionmaker selected or reaffirmed a particular course of action, at least in part, because of its adverse effects. *Wilson*, 2010 WL 1839288 at *6; *Pierce*, 2009 WL 55937 at *13. For these reasons, it will be recommended that Plaintiff's complaint be dismissed as frivolous and/or for failing to state a claim upon which relief can be granted under 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's suit be dismissed as frivolous and/or for failing to state a claim upon which relief can be granted under 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

7

conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this  4th  day of       September      , 2014.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE